Case number 25-8509. Henry Larry Elliott Klayman. Mr. Klayman, on behalf of the respondent. Good morning, your honors. I want to sat through these two oral arguments and I want to commend you on your thoroughness. It's something which I think the American people appreciate. I'd founded Judicial Watch many years ago and I believe that judges are our most important public servants. I do what I do. But this is a very important case. It has manifest injustice in many respects. This case stems from my attempts to gain Proact Vichy entry into a very high-profile and controversial case involving the standoff at Bunkerville with Cliven Bundy. I applied. It was denied and the court found, the lower court found, that I had not been candid with the court. The fact is, is that we had, when it went up to the Ninth Circuit, a very independent jurist. I might add somebody who's not of my ideological ilk, Judge Gould, who said that I disclosed everything I needed to disclose, that I'm an advocate, that it was a zealous representation, and that I didn't do anything wrong. But unfortunately, the DC bar, the disciplinary apparatus, and I mean this in a humble way, has become very partisan and we know that. I'm a conservative activist. I support President Trump. In the age of President Trump, the DC bar has gone after a number of lawyers like me. I'm only one. I'm not going to dwell in there because Your Honor is considering reciprocal discipline. You have an independent authority and duty to decide whether that is warranted or not. Otherwise, it would have been a fait accompli and I wouldn't be here today. What's important here is that three things are in play. One, the entire disciplinary proceeding had nothing to do with the District of Columbia. Absolutely nothing. It was about my conduct in Nevada. I was never sanctioned by the District Court. I was never sanctioned by the Ninth Circuit. In fact, I won the appeal for Bundy when this indictment was dismissed. And I was never ever even referred to an internal court disciplinary proceeding. That underscores the partisan nature. And this court has made a very important ruling, as the Douglas case, that when there's viewpoint discrimination, which there is here, and I brought a separate lawsuit on that which is still running through your court, that in fact this was a violation of my constitutional rights. I had not just the testimony or the findings of Judge Gould in my favor, but Erwin Chmielewski of Berkeley, University California, Berkeley, Boalt Hall. None of these witnesses are my ideological kin. But Chmielewski also found that I did nothing wrong. I did not make any misrepresentations. And the number of pleadings that I filed is not a reason to sanction me or to suspend me for 18 months. Now this is another factor which is very important for this court, is that the DC disciplinary apparatus, that's what I call it, the Ad Hoc Hearing Committee that heard this could not find an ethical violation after the hearing. And that was put in writing, in an order. Four years later, four years later, almost half a decade, when President Trump's coming back into the office, they come up with one-year suspension. And what they're alleging are very petty things. I submit that I did not commit any violations. If there were few inadvertent errors, that's all it was. But you don't get sanctioned for 18 months for that. And what's important here is that if your honor does not, if your honors do not recognize that the DC bar had to follow the rules of its own court, both of the District of Columbia Court of Appeals and the board, which used the word shall, a decision had to be made, a recommendation by the Ad Hoc Hearing Committee, within 120 days. They then you're making a ruling that people don't have to observe your rules either, either lawyers or litigants. So it's very, this is an important case precedentially for this court itself, because the DC Court of Appeals basically said, doesn't matter that we use the word shall, that you shall make a decision in 120 days to recommend it. We can do whatever we want. We have unbridled discretion. Well that's not the way things work, and it's not the way this court works. What is important here is that by waiting four years, they were stacking disciplinary proceedings. In Florida, in a case, and I cite this in the brief, Florida Bar versus Rubin, that's illegal. Florida's recognized that. That's a distinguished court. Other states have recognized that. What they did, the District of Columbia Bar Disciplinary Apparatus, the board and the DCCA, they held back until a prior suspension, which I'm also challenging, which is unjust, which I don't need to get into this here as well. Also the result, partisanship, was over. So what do they do? They start a new one. And that's this Bundy case. And the prosecutor basically has said, Julia Porter, she had no witnesses at all. And in fact, that's why I got a finding after the hearing that there was no showing of an ethical violation. That's very rare after a hearing at that level to make that decision. Your Honor looks at four factors in reciprocal discipline. Lack of due process. If you wait four years, what happened at the Ad Hoc Hearing Committee, memories fade. People forget what went on. Consequently, what was adopted was just the brief of the District of Columbia Office of Disciplinary Counsel, which then went up to the board, and the board gives that deference, so they rubber stamp it, and then the DCCA rubber stamps it. But what is really strange here, in addition to everything else in the age of Donald Trump, is that they upped the requested sanction to 18 months without any valid basis to do it, with a reinstatement provision. At the same time, someone like Kevin Kleinsmith, who pled guilty to a felony, who falsified a document which gave rise in large part to the Russian collusion investigation against the president, he got a slap on the wrist. Seven months, temporary suspension, no reinstatement, no problem. But he's on the other side of the political spectrum. So too for David Kendall of Williams and Connolly. So too for Mark Elias. Williams and Connolly admitted that they helped Hillary destroy the 33,000 emails. Someone filed a complaint. That was thrown in the trash. Elias did other things. No problem for him. So this is a question, not just of a lack of due process after four years, but second factor, there's an infirmity of proof. And your honor, I'm sure we'll review my brief carefully. We gave you record sites. We gave you the transcript. Is it, how can you find that I did anything wrong when I was, it didn't even involve this jurisdiction, never sanctioned, never referred to a bar in Nevada, never referred to the court. This was pulled out of the hat because as Larry Klayman, the founder of Judicial Watch and Freedom Watch, public enemy number one, to the ideology of the District of Columbia bar disciplinary apparatus. And you can check FEC records to see what that is. Then the third factor is this would result in a grave injustice. And for all of these reasons, your honor, and I, I say what you're going to, I look forward to your writing something here because you see these things, it's not just what goes on here, but then it creates reciprocal discipline in all the jurisdictions that I'm a member of. Florida, that's another one of my primary jurisdictions, the Wells District of Columbia, Northern District of Texas, Ninth Circuit, Fifth District of Florida. This has consumed me with time and expense, keeps me from representing clients, and one of those reciprocal discipline proceedings resulted in a suspension in Florida when they never got into what went on here. It was just, okay, this is what DC did, we'll do it too. Well, I know this court's not going to do that because you are a scholarly court and that's why, and it wasn't gratuitous, I complimented you watching these oral arguments because you did read what was presented to you and you did make a reasoned factual decision. So what you're going to write is precedential, and it's precedential with regard to whether this court is going to make a ruling like the District Court of Appeals that you don't have to follow rules. Again, the rules 12 and others, both of the court and of the board, say that you have to make a recommendation 120 days. Here it was four years, almost half a decade, and conveniently only when someone who's perceived to be a supporter of President Trump, and I am and I'm not in any way embarrassed to say that, someone who is and has always been on the cutting edge, you all know who Judicial Watch is. I know you're, I think you're on the third of the three points. I want to make sure that you don't run out of time. Okay. I want to hear your fourth point as well. Well, the fourth point is that lack of due process, infirmity of proof, reciprocal discipline would result in injustice, and that Your Honor has, Your Honors have the ability to decide what sanction, if any, there should be. You have an independent authority, and here there should be none. And in particular, I emphasize this, how can it be that there should be a sanction here when Nevada never sanctioned me, the Ninth Circuit never sanctioned me, when Judge Gould and Erwin Chemerinsky said that I did not fail to disclose anything, and that I had a right because I wanted to defend Clyde and Bundy, who faced life imprisonment, and he had a right under Sixth Amendment to have me as his counsel. And then ultimately the case went up to the Ninth Circuit. I defended Bundy there when, in fact, his indictment was dismissed at the lower court level and won. So that's very important, and I would turn your attention to pages... Mr. Klain, may we take about one more minute, please? Yes. Pages two of my brief, where I quote Judge Gould saying that I properly disclosed what was at issue in the ongoing disciplinary proceeding, that there was no deception. Page seven, where he talks about sometimes lawyers have to be a little bit combative with judges. This judge was criticized for violating Bundy's constitutional rights, that that's understandable in a criminal case. And then Judge Gould, I quote him there as well, Klayman had no greater duty to disclose any possible blemish on his career or reputation beyond responding to district court's further requests. So that's the argument, and I hope that, Your Honor, we'll exercise your independence in making a ruling here and write down the reasons for it, because it would also be helpful for the other jurisdictions. Thank you very much. Just a couple of questions. Yeah, sure. On the 120-day statutory deadline, that rule doesn't impose a consequence if it's failed to meet it. That was the specious argument of our counsel. The District of Columbia's statute of limitations has no consequence. There's no penalty. So by analogy, that should have no penalty either. Okay. Thank you, Your Honor, for asking that question. Okay, and then with respect to your due process claim, you had noticed, you had your opportunity to be heard. So are you really saying that this delay is prejudice to you? Yes, it's prejudice. It created, it creates stacking, where they could stack on something else after I was already clear of another suspension. Florida Bar versus Rubin. You can see the reasoning in there, and it's progeny in other states as well. And also, memories fade. Four years later, how do you remember what went on at the Ad Hoc Hearing Committee? At that point, I don't know who wrote the decision. You take the brief of disciplinary counsel, no witnesses, and you just rubber stamp it, and that's what happened here. And then just quickly on your manifest injustice claim, are you, you're suggesting that it's unconstitutional, but it wasn't really clear. Yes, and there is a case that I filed at the District Court, which is now up here on appeal, and it deals with the Douglas decision that your Honor's Court rendered here, which dealt with the matter years ago. It's now been ratified or adopted by the U.S. Supreme Court just in the last few weeks, that if you take an action based on someone's political or ideological views, it can be a violation of the First and Fifth Amendment. So, Your Honors, even, you know, the option here of staying what you're doing until that is fully litigated. And if you look at Exhibit B of our appendix, there are a number of articles there written on both sides of the political spectrum about what's going on here with the DC bar. And what's also interesting is President Trump sanctioned a number of law firms because he perceived that they opposed him with the Russian collusion. This court and other courts have reversed those sanctions based upon viewpoint discrimination, based upon the fact that those law firms have a different ideological perspective, political perspective, that there was retaliation by President Trump. It goes both ways. And it's very important in this atmosphere that we live in, which is highly partisan, highly combative, that this court make a stand on that because the DC bar disciplinary apparatus is being abused right now. And I suggest, or I ask you to read those articles, and there are many more on Appendix B of what's going on right now. It's widely recognized that it's being used as a weapon under the new disciplinary counsel. The old one, Wallace Shipp, was not that way. It's a fair man. The new Clark was found by the board a professional responsibility to be subject to being disbarred because he wrote a letter which he never sent to Georgia. What could be more absurd and unfair? Rudy Giuliani was disbarred because he made a few errors in pleadings. There are complaints pending against Senators Josh Hawley and Ted Cruz for supporting President Trump in the 2020 elections. Kellyanne Conway, Sidney Powell, John Eastman, a respected law professor, subjected to disbarment here and in California. This is what's going on and someone's got to put a stop to it. Thank you. Thank you. God bless.
judges: Walker; Childs; Ginsburg